RILEY & COMPANY *v.* WRIGHT, insurance commissioner.

1. So much of section 7 of the act of the General Assembly entitled "An act to provide for the establishment of a department of insurance," etc., approved August 19, 1912 (Acts 1912, pp. 119, 124), as provides that "the license of any soliciting agent may be revoked at any time by the insurance commissioner in his discretion," is contrary to article 1, section 1, paragraph 3, of the constitution of this State (Civil Code, § 6359), which guarantees due process of law. The provision is likewise violative of the due-process clause contained in section 1 of the 14th amendment to the constitution of the United States.
2. Accordingly, the court erred in refusing an interlocutory injunction.
                    No. 2162. JUNE 17, 1921.

Petition for injunction. Before Judge Pendleton. Fulton superior court. June 16, 1920.

J. L. Riley, A. W. Malone, and George W. Price, doing business as the firm of J. L. Riley & Company are licensed fire-insurance agents, and have been engaged in the insurance business in Atlanta for many years. They value their established business at $50,000. On April 14, 1920, the Honorable William A. Wright, insurance commissioner of Georgia, wrote to J. L. Riley & Co., as follows: "I·am enclosing seven statements to parties named therein, on your billheads, and evidently sent from your office. Two of these are for the Stuyvesant Fire Insurance Company, one for the London Guarantee & Accident Company, one for the National Ben Franklin, and three for Globe & Rutgers. Each of these statements shows a brokerage fee or rebate of the premium. Will you kindly at once advise me why the conduct of this business in this State is not such a violation of the law, and of the rules and regulations of this Department, as would render it necessary for me to revoke your license to do business in Georgia? Awaiting your reply, with return of these papers, I am," etc. The payments made by the insurance agents to certain named persons were made under contracts between said parties and the agents. These several contracts were contained in letters, and are as follows:

39

"Broker's Contract.

"Confirming our conversation, we will allow you on and after this date a Brokerage on any business which you may place in companies for which we are agent, according to the following schedule:

| | |
|---|---|
| Fire insurance, automobiles | 10% |
| Fire insurance, non-preferred classes | 10% |
| Fire insurance, preferred classes | 15% |
| Liability, insurance, all classes | 15% |
| Surety bonds, all classes | 15% |
| Steam-boiler insurance | 20% |
| Personal accident and health insurance | 25% |

"Note—Dwellings, churches, schoolhouses, and brick store buildings, under the city fire protection, are considered as preferred. All other classes are non-preferred.

"Under this arrangement, all policies will be charged to your personal account and must be paid for within 30 days from date of issue, and in case of cancellation before expiration, for any cause, you are to pay us the same return commission on the unearned portion of the premium at the date of cancellation as you received when the policy was issued. It is understood that you are the agent for the assured and that we are agent for the companies, and that your position in all transactions is that of a broker. Yours very truly, J. L. Riley & Co.

"I agree to the above ———."

Failing to adjust the matter in conference, J. L. Riley & Company filed a petition for injunction against the insurance commissioner, in which they alleged that the commissioner was threatening to revoke their license as insurance agents, upon the ground that they had paid brokerage to certain persons in writing insurance. The plaintiffs alleged that the contracts under which these payments were made were legal contracts, wholly of brokerage, and not of agency. They alleged that the threatened revocation of their license as fire-insurance agents by the insurance commissioner upon the ground stated was wholly unauthorized, and that the provision of section seven of the insurance act of August 19, 1912 (Acts 1912, pp. 119, 143), authorizing the insurance commissioner, in his discretion and without notice and an opportunity to be heard, to cancel the license of an insurance soliciting agent, is unconstitutional because it violates the due-process and equal-pro-

tection clauses of the State and Federal constitutions, and paragraph eight of section seven of article three of the constitution of this State, which declares that no law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof, in that nothing in the title of said act authorizes the regulation of insurance agents. Plaintiffs further alleged discrimination in the administration of the law and in the enforcement of section seven of the insurance act of 1912, supra, upon the ground that the insurance commissioner is permitting other agents to do the same acts that plaintiffs are charged with doing, thereby depriving plaintiffs of the equal protection of the law, in violation of the 14th amendment to the constitution of the United States, and of paragraphs three and twenty-five of article one, section one, of the constitution of Georgia. The insurance commissioner answered, admitting his intention to revoke plaintiffs' license as fire-insurance agents, for the reasons stated in the petition, but averring that he had offered to adjust the matter upon plaintiffs paying the license fees due by the alleged brokers for the present and past years. Discrimination in the administration of the law was denied. Both by answer and demurrer the insurance commissioner contended that the law of Georgia does not recognize insurance brokers, but specifically makes such brokers agents, and that plaintiffs had violated the provisions of the insurance act of 1912, contained in sections 2445 (a) and (b) of Park's Annotated Code of Georgia, in employing agents to write insurance for them without first obtaining license for such agents; that the payment of brokerage under the contracts with alleged brokers constituted in any event a rebating within the prohibition of the insurance act of 1912, contained in section 2440 (b) of Park's Annotated Code; that section seven of the insurance act (section 2445 (b) of Park's Annotated Code) is not violative of any provision of the constitution of Georgia or of the United States, and the power of revocation in the insurance commissioner is not subject to the control of the courts unless the power be abused, and under the plaintiffs' allegations no abuse of power appears. Upon the hearing evidence was introduced by the plaintiffs, and the defendant rested his case upon the allegations and admissions made in the plaintiffs' petition. The court refused

the injunction, but granted a supersedeas. To the order refusing an interlocutory injunction the plaintiffs excepted.

*Watkins, Russell & Asbill,* for plaintiffs.

*R. A. Denny, attorney-general,* and *Graham Wright,* for defendant.

GEORGE, J. (After stating the foregoing facts.) The Civil Code (1910), § 2443, provides: "Any person who solicits in behalf of any insurance company, or agent of the same, incorporated by the laws of this or any other State or foreign government, or who takes or transmits, other than for himself, any application for insurance or any policy of insurance to or from such company, or agent of the same, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk at any time, or receive or collect or transmit any premiums of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or in behalf of any such company, whether any of such acts shall be done at the instance or request or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken." Section 6 of the act of the General Assembly entitled "An act to provide for the establishment of a department of insurance," etc., approved August 19, 1912 (Acts 1912, pp. 119, 124), provides that "All persons shall be required to procure a license from the department of insurance before soliciting business in this State, except those agents whose names are furnished the insurance commissioner by some reputable insurance company as its accredited agents." Section 7 of that act is as follows: "All agents soliciting insurance in the State of Georgia shall, before procuring the license from the department of insurance, make application to the commissioner; and before the said commissioner shall issue such license, he shall satisfy himself that such agent is authorized by some reputable insurance company to do business in this State, and the commissioner shall be advised and convinced as to the moral character and integrity of such applicant for license.

The license of any soliciting agent may be revoked at any time by the insurance commissioner in his discretion."

The brokers were doing business without license, and in our opinion these brokers were agents of plaintiffs. Under the admitted facts in this case, the question therefore is whether so much of section 7 of the act as provides that "the license of any soliciting agent may be revoked at any time by the insurance commissioner in his discretion" is unconstitutional. Riley & Company have been engaged in the fire-insurance business in the city of Atlanta for many years. They have established a business valued by them at $50,000. They have expended large sums of money in the enterprise. It may be assumed that they will continue to represent fire-insurance companies under satisfactory arrangements with the companies. Riley & Company's right to carry on their business is something more than a mere indulgence revocable at the pleasure of the insurance commissioner, or at the command of the legislature. In Dent v. West Virginia, 129 U. S. 114 (9 Sup. Ct. 231, 30 L. ed. 623),— opinion by Justice Field, it is said: "It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and can not be arbitrarily taken from them any more than their real or personal property can be thus taken." Compare Ex parte Garland, 71 U. S. 333 (18 L. ed. 366), and Ex parte Robinson, 86 U. S. 505 (22 L. ed. 205). Before the right of any citizen to engage in any lawful business, calling, or profession can be taken from him, he should have notice of the ground of the complaint against him, and ample opportunity of defense. While the insurance commissioner advised Riley & Company that he intended to revoke their license, the notice was given as matter of grace. It must be noted that section 7 of the act approved August 19, 1912, quoted above, makes no provision whatever for notice,

and affords no opportunity to be heard. The provision of the act is therefore violative of paragraph 3 of section 1 of article 1 of the constitution of this State, which declares that " No person shall be deprived of life, liberty, or property, except by due process of law." For the reasons stated, the provision is likewise violative of the due-process clause contained in section 1 of the fourteenth amendment to the constitution of the United States.

The defendant contends that the insurance business is subject to police regulation, and that the license imposed upon soliciting insurance agents is imposed in the exercise of the police power and not for the purpose of raising revenue. Our attention is directed to the provision of the act which provides in effect that the insurance commissioner, before issuing a license to an agent, must be advised and convinced of the moral character and integrity of the applicant for the license. It is insisted, therefore, that the license does not confer upon the holder any vested right, and is revocable by the State at pleasure. The cases of *Silver* v. *Sparta,* 107 *Ga.* 278 (33 S. E. 31), and *Brown* v. *State,* 82 *Ga.* 224 (7 S. E. 915), are cited in support of the contention. The cases of *Ison* v. *Griffin,* 98 *Ga.* 623 (25 S. E. 611), *Whaley* v. *Columbus,* 89 *Ga.* 781 (15 S. E. 694), and *Cassidy* v. *Macon,* 133 *Ga.* 689 (66 S. E. 941), are also in point. It is undoubtedly true that the holder of a license to sell intoxicating liquors, for instance, has no property right in his license, and that the State in the exercise of its police power can revoke the license at will. The character of the business determines the right and protection to which the holder of the license is entitled. The insurance business is per se useful and lawful. The legislature can not destroy such a business at will, nor can it arbitrarily take away the right to carry on such business. Where the business is inherently harmful, and permissible only under license of the State, for instance, the licensee accepts his license subject to the right of the State to outlaw the business and to revoke his license. The cases cited and relied upon by counsel for the defendant are therefore not in point. On the contrary, this court in *Mott* v. *State Board of Optometry,* 148 *Ga.* 55 (95 S. E. 867), declared section 7 of the act of the General Assembly approved August 7, 1916 (Acts 1916, p. 83), which provided that " the State board of examiners in optometry shall refuse to issue the certificate of registration provided for in this act to any per-

son who shall have been guilty of grossly unprofessional and dishonest conduct," to be unconstitutional and void. The act there considered sought to regulate a business per se useful and lawful. If section 7 of the act approved August 19, 1912, is a mere police regulation, certainly the provision of the act considered in *Mott* v. *State Board of Optometry,* supra, was likewise a police regulation. Upon the theory that the character of the business determines the right and protection to which the party engaged therein is entitled, this court held the provision of the act of 1916 to be unconstitutional, because it did not provide for notice and an opportunity to be heard. That act did provide for an appeal from the decision of the State board of examiners; but even the provision in the act with reference to an appeal to the superior court after the board had rendered judgment of condemnation was held not to be a compliance with the mandate of the constitution. In principle that case is controlling and serves to distinguish the present case from the cases cited and relied upon by counsel for the defendant. It follows that the court erred in refusing an interlocutory injunction. *Judgment reversed. All the Justices concur.*